I cannot concur with the Chief Justice in holding that this instrument, as a chattel mortgage, is upon its face void in law. I admit, that if it contained a provision allowing the mortgagor to retain possession of the goods, and sell and dispose of them at his pleasure, it would not be a mortgage, or create any lien on the property, as against subsequent purchasers and perhaps creditors, (Lowry v. Wood, 17 Wend. 492,) but no such provision appears on the face of the paper, and if it required a resort to other evidence to prove it, the question became one of fact for the jury to decide.
But the principal ground on which the alledged invalidity of this mortgage is founded, is that it contains a stipulation which, in effect, permitted the mortgagor to retain possession of the mortgaged property until default should be made in some one of the payments secured by it. The question presented by this proposition has produced much forensic discussion and some diversity of judicial opinion, in this state, but it is generally considered satisfactorily settled by the court of last resort, in the case of Smith and Hoe v. Acker, (23 Wend. 658,) though the counsel who tried this cause for the defendants seems disposed to revive the controversy. The arguments on both sides of this question have long since been exhausted, and it is quite apparent that they can never be reconciled, for they originate in different principles and designedly tend to different conclusions. On one side it is attempted to make the possession
of personal property absolute evidence of ownership, and all conveyances attempting to create a title inconsistent with that possession, *Page 595 absolutely void, as against creditors and purchasers. While on the other side such possession is regarded only as presumptive evidence of ownership, and such conveyances prima facie
fraudulent. The principle attempted to be maintained by those who hold to the first proposition, was adopted by Buller, J. in the case of Edwards v. Harbur, (2 T.R. 594,) and is fully acknowledged by a remark of Lord Kenyon, in the case of Gordon
v. The East India Co., (7 T.R. 234,) in which his lordship says, "I lament that it ever was decided that the possession and apparent ownership of personal property may be in one person, and the title in another, for I think it would have been better for the public, if the possession of such property (except in the case of factors) were to carry the title with it." The absurdity of such a rule, when applied to the social and business relations of civilized life, is well illustrated by Senator Dickinson in the case of Stoddard v. Butler, (20 Wend. 544,) and by Hopkins and Verplank, senators, in the case of Smith Hoe v.Acker, and in the last case it was distinctly repudiated and the principles of the common law as improved by the statute, clearly defined, and triumphantly sustained. The case of Smith Hoe v. Acker, adopts the principles maintained by those who hold that the possession, by a vendor or mortgagor of personal property, after such sale or mortgage, is only presumptive evidence that the sale or mortgage was made to defraud creditors and must be considered the law of the land. A bare reference to the decision of the court, in the case of Smith Hoe v.Acker, would sufficiently show the grounds upon which I put my non-concurrence in this case; but as there still appears to be some misunderstanding in reference to the principles decided in that case and their consequences, I have concluded to state the simple propositions on which I found my opinion, without attempting to illustrate them by arguments already sufficiently repeated.
By the common law, personal property is the first and appropriate fund for the payment of debts. And all conveyances of such property, made by a debtor, for the purpose of defrauding his creditors, or preventing the application of his property to the payment of his debts, were void as against such creditors. They *Page 596 
were considered as no conveyances as against them, but a mere trick or contrivance to keep the property out of their reach. But as those who alledged the fraudulent purpose of the conveyance were bound to prove it, and as direct proof could seldom be obtained, the party seeking to establish the fraudulent design or purpose of the conveyance, was obliged to resort to circumstantial evidence or the proof of facts or circumstances indicating that the conveyance was not real, but a mere sham, made to defeat creditors, among the strongest and most prominent of which was the continued possession and use of the property by the vendor after the pretended conveyance; not that such possession was fraudulent in itself, but was a sign or indication that he still owned the property which he had pretended to convey. This fact when proved and all other circumstances tending to the same conclusion, were but items of evidence to be explained by other evidence, and all submitted to the jury. In this conflict and confusion of circumstances, the truth was sometimes lost, and conveyances made to defraud creditors suffered to escape with impunity. To facilitate the detection ofthe fraudulent purpose, with which such conveyances were made, several statutes were passed, both in England and this state, which, in this state resulted in the revised statute of 1830. (2R.S. 136.) All that part of the statute which makes such conveyances void, is founded on the common law and is generally considered but declaratory of that law; but the 5th section is a statutory provision, devoted entirely to the means of proving that intention, design or purpose, which when proved, always rendered conveyances by a debtor void as against his creditors. The 5th section provides that every sale, made by a vendor of goods or chattels in his possession, or under his control, and every assignment of goods and chattels, by way of mortgage or security, or upon any condition whatever, unless the same be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things sold, mortgaged or assigned, shall be presumed to be fraudulent and void, as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith, and *Page 597 
shall be conclusive evidence of fraud, unless it shall be made to appear, on the part of the persons claiming under such sale or assignment, that the same was made in good faith, and without any intention to defraud such creditors or purchasers.
It appears to me strange that this section could be made the cause of so much difference of opinion as has sprung up under it. The subject of inquiry, in the class of cases to which it relates, is the intention, design or purpose with which the sale or assignment was made, and the fact attempted to be established is, that it was made with the intention of defrauding creditors, and the statute referred to makes a mere naked sale or assignment, unaccompanied by the delivery of the property and actual and continued change of possession presumptive evidence of that fraudulent intent, and conclusive evidence of such fraud, unless it shall be made to appear on the part of the person claiming under such sale or assignment, that the same (the sale or assignment) was made in good faith and without any intent to defraud such creditors or purchasers. The whole effect of the statute is to change the burden of proof and to throw it on the party claiming to sustain the suspected sale or assignment, by making the fact of unchanged possession, which before was a mere sign of fraud, strong presumptive evidence of the alledged fraud, to be rebutted only by proof that the sale or assignment was made in good faith and without any intention to defraud creditors or purchasers. How can the trial of this question, which involves only the intention, design or purpose with which the sale or assignment was made, be drawn off from the true issue and perverted into an inquiry about the motives, reasons or excuses for not changing the possession? There is no reason or excuse, except that the property was not in the possession or under the control of the vendor or assignor, which will prevent the fact of unchanged possession from being presumptive evidence that the sale or assignment was fraudulent. So long as that fact stands uncontradicted, it creates a statutory presumption that thesale or assignment was fraudulent; not that the possession is fraudulent in itself, but is presumptive evidence that the sale or assignment was fraudulent. And the statute *Page 598 
declares that such presumption shall become conclusive evidence of fraud, unless rebutted by proof that the sale or assignment was made in good faith and without any intention to defraud creditors or purchasers. Thus requiring the party who claims under such a suspicious title, merely to show that it is honest, a thing much easier shown if true, than any satisfactory reasons for not changing the possession of the property, and yet one that meets the whole case, rebuts the presumption and relieves the transaction from suspicion. The proof of good motives, reasons or excuses for not changing the possession, does not tend to show that the sale or assignment was made in good faith and without any intention to defraud creditors or purchasers. While the proof of good faith and freedom from intention to defraud, does tend to rebut the statutory presumption, and if sufficient, after being encountered by other evidence, to establish those facts, does sustain the conveyance, although the possession has not been changed. This conclusion results not only from the nature and object of the inquiry, but from the alternative language of the statute.
How then can a chattel mortgage be void upon its face, unless it contains an admission that it was made to defraud creditors? Whether the fact of unchanged possession appear upon the face of the mortgage or otherwise, the presumption of fraud arising from that fact, may be rebutted by proof of good faith. It is true that wherever the fact of unchanged possession appears, whether on the face of the mortgage or otherwise, and there is no
evidence to rebut the presumption of fraud arising from that fact, it is the duty of the court to enforce the statute presumption, and decide that point without submitting it to a jury. It is then a question of law. But if there is any material evidence in the case tending to show that the mortgage was made in good faith and without any intention to defraud creditors, that raises a question of fact which it is the duty of the court to submit to the jury. (2 R.S. 137, § 4.)
In the case under consideration it was clearly proved, not only by the instrument containing the mortgage, but by other evidence, that Burdick purchased a quantity of goods and rented *Page 599 
a store from Griswold, and simultaneously with taking the conveyance and possession of the goods, and the possession of the store, gave the mortgage in question for the purchase money and rent. Did not these facts tend to show that the mortgage was made in good faith, and in a transaction which could not defraud pre-existing creditors. If there were no other goods inclued in this mortgage than those which were purchased from Griswold, and the mortgage was given simultaneously with the purchase, and only for the purchase money and the rent, I think the jury might very well come to the conclusion that the mortgage was made in good faith and without any intention to defraud creditors or purchasers. At any rate, I think the judge before whom this cause was tried did right in refusing to rule that this mortgage was void on its face, and in submitting the case to the jury, and that the supreme court at the general term, decided correctly in sustaining him on this point.
But the statute of 1833 (p. 402,) makes every chattel mortgage, when the possession of the mortgaged property is not delivered, absolutely void as against creditors of the mortgagor,c. and unless the mortgage, or a true copy thereof, is filed in the proper office mentioned in the statute, (in this case the town clerk's office,) and requires that such mortgages shall be deposited in the office, to be kept there for the inspection ofall persons interested. The object of filing the mortgage is to give notice of its existence to all persons who choose to inspect it, and when properly filed it is legal presumptive notice, binding on all persons interested. This mortgage was written in the inside of a five quire account book, partly filled with accounts and labelled "Day Book." It was incapable of being put into the pigeon holes where the other chattel mortgages were kept, and was therefore laid away in the desk under them. It appears to me that nobody would be likely to look into this old account book for a chattel mortgage, and that such a filing was not fair notice to those interested, nor sufficient to charge them with a knowledge of the mortgage, and as there was no proof of actual notice to these defendants, I feel myself bound to concur in the decision granting a new trial, for this reason. *Page 600 
H. GRAY, J. concurred in the opinion of MULLETT, J., both upon the question of fraud and in respect to the filing of the mortgage; and he therefore also voted for reversal
GARDINER and PAIGE, Js. concurred with MULLETT, J. upon the question of fraud, but they were of opinion that the mortgage was duly filed, and therefore they voted for affirmance.
Judgment reversed, and new trial granted.